UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:
JACQUELINE R. KUCERA,                       Chapter 13
f/k/a JACQUELINE R. HARTLEY,                Case No. 08-17304-WCH
          DEBTOR

**MEMORANDUM OF DECISION**

I. INTRODUCTION

The matters before the Court are the Trustee's Objection to Confirmation of Debtor's Chapter 13 Plan (the "Objection") filed by Carolyn A. Bankowski, Standing Chapter 13 Trustee (the "Trustee") and the Opposition to Trustee's Objection to Confirmation of Debtor's Chapter 13 Plan (the "Opposition) filed by Jacqueline R. Kucera (the "Debtor").  Objecting to confirmation of the Debtor's Chapter 13 Plan (the "Plan) under 11 U.S.C. § 1325(b)(1), the Trustee contends that the Debtor is not applying all of her "projected disposable income" to pay unsecured creditors.  For the reasons set forth below, I will enter an order sustaining the Objection and allowing the Debtor to file an amended Chapter 13 plan.

II. BACKGROUND

The Debtor and Carsten Jessen ("Jessen") executed a Separation Agreement (the "Agreement") in the Massachusetts Probate and Family Court Department (the "Family Court") on August 15, 2002.[1]  Under the Agreement, Jessen agreed to transfer to the Debtor his interest in the real property located at 9 Pine Hill Road, Framingham, Massachusetts (the "Property").  In

---

[1] The Agreement was amended on October 7, 2002.

1

exchange, the Debtor agreed to either sell or refinance the Property within 5 years and to pay Jessen $100,000 from the sale proceeds or refinancing funds. On October 2, 2003, Jessen filed a Complaint for Modification in the Family Court seeking an attachment on the Property in the amount of $100,000 to secure the Debtor's obligation to him. On November 24, 2003, the Family Court issued a Writ of Attachment on the Property for $100,000 (the "Lien").

On September 29, 2008, the Debtor filed a Chapter 13 petition and the Plan. In the Plan, the Debtor proposes payments of $282 per month for 60 months with a 3.5% dividend to unsecured creditors.[2] Also in the Plan, Debtor states that she will avoid the Lien pursuant to 11 U.S.C. § 522(f) and will instead treat it as a general unsecured claim subject to discharge pursuant to 11 U.S.C. §§ 1328(a) and 523(a).[3] The Debtor filed a Motion to Avoid Judicial Lien on October 30, 2008, and in the absence of an objection, I granted the Debtor's motion on December 3, 2008.

On January 8, 2009, the Debtor filed an Amended Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form 22C"). Line 14 of Form 22C shows the Debtor's current monthly income of $7,734.70, which multiplied by 12, equals the Debtor's annualized current monthly income of $92,814.40. This amount is substantially greater than the median family income that is applicable to the Debtor.[4] Her

---

[2] In the Plan, the Debtor lists $257, 142.50 as the total amount of general unsecured claims. The Lien is included in this amount.

[3] All future references to section numbers are to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, *et seq.*

[4] On the Debtor's petition date, the Massachusetts median income for 1 wage earner was $52,633.

applicable commitment period, therefore, is 5 years, and her disposable income is determined under § 1325(b)(3).

In calculating her disposable income in Part IV of Form 22C, "Calculation of Deductions From Income," the Debtor deducted a monthly payment of $1,666.66 to Jeesen on Line 48, Subpart C, listing the Property as the security. Line 48 defines the payments that can be listed on that line in relevant part:

> **Other payments on secured claims**. If any debts listed in Line 47 are secured by your primary residence, a motor vehicle, or other property necessary for your support or the support of your dependents, you may included in your deduction 1/60th of any amount (the "cure amount") that you must pay the creditor in addition to the payments listed in Line 47, in order to maintain possession of the property.[5]

At the end of Part IV, on Line 52, Subpart D, "Total Deductions from Income," the Debtor claims a total deduction of $8,326.02.[6] After taking these deductions, the Debtor reports negative $591.32 on Line 59, Part VI of Form 22C, "Determination of Disposable Income Under § 1325(b)(2)," as her monthly disposable income.

The Debtor's Schedule I - Current Income of Individual Debtor(s) ("Schedule I"), filed on September 29, 2008 and later amended on January 9, 2009, and Schedule J - Current

---

[5] Form 22C, Line 48. I note that Line 48 is not the appropriate line on which the Debtor listed the Lien. Line 47 is the applicable line, which in pertinent part, reads:

> **Future payments on secured claims**. For each of your debts that is secured by an interest in property that you own, list the name of the creditor, identify the property securing the debt, and state the Average Monthly Payment. . . . The Average Monthly Payment is the total of all amounts scheduled as contractually due to each Secured Creditor in the 60 months following the filing of the bankruptcy case, divided by 60.

[6] The Debtor's deductions are composed of $4,009.04 in "Total Expenses Allowed under IRS standards" on Line 38, $2,574.48 in "Future payments on secured claims" on Line 47, and $1,743.40 for "Other payments on secured claims" on Line 48, with the Lien payment comprising $1,666.66 of the Line 48 amount.

Expenditures of Individual Debtor(s) ("Schedule J"), filed on September 29, 2008, reflect a different financial situation. Schedule I reveals an average monthly income of $5,538.75, and Schedule J reveals average monthly expenses of $5,273.15, for a total monthly net income of $265.60. The Debtor does not list the Lien as an expense on Schedule J.

On November 24, 2008, the Trustee filed the Objection, asserting that the Debtor was not applying all of her projected disposable income to pay unsecured creditors. The Debtor filed the Opposition on December 2, 2008, and the Trustee filed a reply on December 9, 2008. I held a hearing on the Objection on January 8, 2009. At the hearing's conclusion, I took the Objection under advisement. Following the hearing, both the Trustee and the Debtor filed briefs in support of their respective positions.

III. POSITIONS OF THE PARTIES

A. The Trustee

Citing § 1325(b)(1)(B), the Trustee contends that the Court may not approve the Plan because the Debtor is not devoting all of her "projected disposable income" to pay unsecured creditors. The Trustee disputes the Debtor's Lien deduction as a secured debt expense on Line 48 of Form 22C because the Debtor stated in the Plan that she will, and ultimately did, avoid the Lien . If the Lien payment deduction is omitted from Line 48, the Debtor's projected monthly disposable income on Line 59 would equal $1,075.34. Multiplied by 60, this amount would generate $64,520.40 available to pay unsecured creditors.

Relying on *Kibbe v. Sumski,* where the United States Bankruptcy Appellate Panel for the First Circuit held that the income side of § 1325(b)(1)(B)'s projected disposable income equation is forward-looking and based on reality, the Trustee argues that the expense equation of

projected disposable income is also forward-looking.[7] Further, the Trustee contends, the Chapter 13 plan creates a new agreement between the debtor and the creditor, so the term "contractually due" under 707(b)(2)(A)(iii)(I) is defined with reference to the plan and not to the original contract.

In the alternative, the Trustee argues that the Court cannot confirm the Debtor's plan because the Debtor is not making a good faith effort to repay her unsecured creditors under § 1325(a)(3). The Trustee maintains that the Debtor's deduction of the Lien on Line 48 of Form 22C is an "extraordinary circumstance" that justifies a factual inquiry of the claimed expense. By avoiding the Lien, the Trustee argues that the Debtor has declared that it is not an actual expense, so the Debtor cannot deduct it as an expense.

B. The Debtor

In opposition, the Debtor claims that she properly calculated her projected disposable income. The Debtor maintains that the term "projected disposable income" is the equivalent of "disposable income," which is defined as the debtor's "current monthly income" under § 1325(b)(2).[8] In calculating her current monthly income, the Debtor argues that she is permitted to deduct the Lien as an expense on Line 48 of Form 22C because the Lien is a secured obligation that was contractually due when she filed her petition. The Debtor concedes, however, that if the petition date is not the measuring date, and the confirmation date is, the Lien deduction would not be proper.

Additionally, the Debtor maintains that the Trustee's good faith argument cannot be

---

[7] *Kibbe v. Sumski (In re Kibbe),* 361 B.R. 302 (B.A.P. 1st Cir. 2007).

[8] In her brief, the Debtor cites to § 1322(b), but because § 1322(b) is not relevant to the Debtor's opposition, I construe it as an error and provide § 1325(b) as the intended citation.

5

considered because she did not raise it in her initial objection to the Plan. Moreover, the Debtor argues, the Trustee's good faith argument has been made in bad faith because the Debtor's compliance with the statute's plain language and its statutory scheme is not an "extraordinary circumstance" justifying the Court's inquiry of the Debtor's expense deduction.

IV. <u>DISCUSSION</u>

Section 1325(b)(1) provides:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.[9]

Because the Plan proposes only a 3.5% dividend to unsecured creditors, its confirmation depends on the Debtor applying all of her "projected disposable income" to pay unsecured creditors.

"Projected disposable income" is not defined in the Bankruptcy Code. The term "disposable income," however, is defined in § 1325(b)(2). In pertinent part, § 1325(b)(2) reads: "[f]or purposes of this subsection, the term "disposable income" means *current monthly income* received by the debtor...less *amounts reasonably necessary to be expended.* . . ."[10] The first step to this disposable income equation is to calculate Debtor's "current monthly income." Current monthly income is defined in § 101(10A). Generally, it is the amount of income the debtor

---

[9] 11 U.S.C. § 1325(b)(1) (emphasis added).

[10] 11 U.S.C. § 1325(b)(2) (emphasis added).

received during the six full months prior to the month the debtor filed the bankruptcy petition.[11] As the Trustee does not dispute this amount, I will not consider whether the Debtor properly calculated her current monthly income.

Next, "amounts reasonably necessary to be expended" is subtracted from the Debtor's current monthly income. For above-median income debtors, "amounts reasonably necessary to be expended . . . shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2) . . . ."[12] Section 707(b) is the Chapter 7 means test, which is used to determine "if the granting of relief" under Chapter 7 "would be an abuse of the provisions" of that Chapter.[13]

Under § 707(b)(2)(A)(iii), a debtor may deduct contractual secured debt obligations. In relevant part, it provides:

> (iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of–
>
> (I) the total of all amounts *scheduled as contractually due to secured creditors* in each month of the 60 months following the date of the petition . . . divided by 60.[14]

The resolution of this case turns upon the statutory construction of § 707(b)(2)(A)(iii)(I). Resolution of a dispute over the meaning of a statute begins with the language of the statute itself.[15] "[W]hen the statute's language is plain, the sole function of the courts-at least where the

---

[11] 11 U.S.C. § 101(10A).

[12] 11 U.S.C. § 1325(b)(3).

[13] 11 U.S.C. § 707(b)(1).

[14] 11 U.S.C. § 707(b)(2)(A)(iii) (emphasis added).

[15] *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (citing *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685, 105 S.Ct. 2297, 103 L.Ed.2d 692 (1985)).

disposition required by the text is not absurd-is to enforce it according to its terms."[16]  Following this command, the United States Bankruptcy Appellate Panel of the First Circuit, in *Morse v. Rudler*, examined the competing interpretations among the courts regarding the phrase "scheduled as contractually due."[17]  Rejecting the interpretation that "scheduled as contractually due" refers only to the debts identified on the debtor's bankruptcy schedules, the Panel interpreted the phrase to refer to those debts that the debtor is required to pay under the contract.[18]

The expense deduction under § 707(b)(2)(A)(iii)(I), however, is not for *all* amounts that a debtor is required to pay under the contract.  Rather, the deduction is limited to those amounts that are "scheduled as contractually due *to secured creditors*.[19]  Section 707(b)(2)(A)(iii)(I), therefore, differentiates between voluntary secured debts, such as mortgage and security agreements, and involuntary secured debts, such as judgment liens and statutory liens.[20]  Under the statute, voluntary liens can be deducted but involuntary liens cannot.

Here, the Lien was not created by contract, but by judicial decree, so it is an involuntary lien that the Debtor improperly deducted under § 707(b)(2)(A)(iii)(I).[21]  As the Debtor is not

---

[16] *Lamie v. United States*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (*quoting Hartford Underwriters Ins. Co. v. Union Planters Banks, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000); *Ron Pair*, 489 U.S. at 241, 109 S.Ct. 1026, 103 L.Ed.2d 290; *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)).

[17] *Morse v. Rudler*, 388 B.R. 433 (B.A.P. 1st Cir. 2008).

[18] *Id*. at 437-438.

[19] 11 U.S.C. § 707(b)(2)(A)(iii) (emphasis added).

[20] *In re Anderson*, 383 B.R. 699, 707 (Bankr. S.D. Ohio 2008).

[21] The outcome would be the same if I substituted the Plan as the applicable contract,

applying all of her "disposable income" to the Plan, it is unnecessary for me to discuss further whether she is applying all of her "projected" disposable income to the Plan under § 1325(b)(1)(B) or whether she proposed the Plan in good faith under § 1325(a)(3).

V. <u>CONCLUSION</u>

In light of the foregoing, I will enter an order sustaining the Trustee's objection to the Plan. I will allow the Debtor 30 days from the date of the order to file an amended Chapter 13 plan.

_____
William Hillman
United States Bankruptcy Judge

Dated: March 12, 2009

---

which the Trustee urges that I do.